UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ALBERTO ESQUIVEL PACHECO,<br><br>        Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, PATRICK DIVVER, TODD M. LYONS, KRISTI NOEM, PAM BONDI,<br><br>        Respondents. | Case No.: 3:25-cv-2421-JO-AHG<br><br>**ORDER GRANTING PETITION FOR HABEAS CORPUS [DKT. 1]** |

  Petitioner Luis Alberto Esquivel Pacheco ("Petitioner") filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the lawfulness of his immigration detention. Dkt. 1. He argues that Immigration and Customs Enforcement ("ICE") officers unlawfully detained him despite the government's earlier grant of parole allowing him to remain at liberty while awaiting a final decision on his removal proceedings. *Id.* For the reasons stated below, the Court granted his habeas petition during a hearing on October 16, 2025.

# I. FACTUAL BACKGROUND

Petitioner fled cartel violence in his home country of Mexico and came to the United States to seek asylum. *Id.* ¶ 45. He claims that after his brother left the Zetas cartel, his family became targets of retaliation. *Id.* Several relatives were killed and others, including his brother, disappeared. *Id.* On March 18, 2019, Petitioner presented himself at the San Ysidro Port of Entry with his wife and children and requested asylum. *Id.*; Dkt. 10 at 21. Because he lacked valid entry documents, the Department of Homeland Security ("DHS") found him inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and initiated removal proceedings under § 240 of the Immigration and Nationality Act ("INA"). Dkt. 10 at 22. On March 21, 2019, DHS released him on parole under the condition that he comply with reporting obligations. Dkt. 15-1 at 5. Subsequently, Petitioner filed an application for asylum, requesting relief from removal. Dkt. 10 at 28.

For the next six years, DHS continued to allow Petitioner to remain at liberty and granted him work authorization while he awaited a final decision on his request for asylum. Dkt. 1 ¶¶ 47–48. On September 29, 2020, an immigration judge denied his application and ordered him removed to Mexico. *Id.* ¶ 48; Dkt. 10 at 28–29. Petitioner timely appealed this decision to the Board of Immigration Appeals ("BIA") on October 23, 2020. Dkt. 1 ¶ 48.

Although this appeal was still pending and his parole status had not changed, the government detained Petitioner on August 14, 2025. *Id.* When he reported to work at Camp Pendleton, ICE officers arrested him "for being in the U.S. illegally." *Id.* ¶ 51. Petitioner informed the officers that his BIA appeal remained pending, but they still transported him to the Otay Mesa Detention Center and detained him for nearly two months. *Id.* ¶¶ 51–52. During that period, Petitioner submitted a parole request, but the government did not act on it, leaving him no choice but to file this habeas petition to seek his release. *Id.* ¶ 53.

Based on these facts, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention. *See generally* Dkt. 1. He

argues that his detention violates the Fifth Amendment Due Process Clause and § 1226 of the INA, and constitutes arbitrary and capricious government action in violation of the Administrative Procedure Act ("APA"). *Id.* ¶¶ 54–62. After holding oral argument on October 16, 2025, the Court granted Petitioner's habeas petition as to his procedural due process claim[1] and ordered his immediate release from ICE custody. Dkt. 18.

## II.  LEGAL STANDARD FOR HABEAS PETITIONS

Under the Constitution, "every individual detained within the United States" has the right to demand judicial review of unconstitutional or unlawful detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). Under 28 U.S.C. § 2241, district courts possess broad authority to grant a writ of habeas corpus ordering the release of any individual "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). By authorizing and requiring courts to safeguard an individual's fundamental right to liberty, the writ of habeas corpus has historically served as one of the judiciary's strongest checks on illegal government custody and the executive's power to impose civil detention without trial. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).

## III.  JURISDICTION

The Court begins by determining whether it has jurisdiction to review Petitioner's constitutional and statutory challenges to his detention despite the jurisdictional bars imposed by 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g).

In challenging the Court's jurisdiction, Respondents rely on three provisions of the INA, all located in the section entitled "Judicial review of orders of removal." Dkt. 10 at 8–12. Section 1252(a)(5) designates the court of appeals as the "sole and exclusive means for judicial review of an order of removal," while § 1252(b)(9) defines the scope of that

---

[1]  Because the Court found that Respondents' detention of Petitioner violated his procedural due process rights, it declined to reach his claims under the INA and APA.

judicial review to encompass "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States." Read together, these provisions "channel" to the court of appeals "decisions and actions leading up to or consequent upon final orders of deportation." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483, 485 (1999). Section 1252(g) further bars courts from reviewing claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g).

While they appear broad, these jurisdictional bars are not all-encompassing. Sections 1252(a)(5) and (b)(9) do not foreclose review of "claims that are independent of or collateral to the removal process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016). Challenges to the legality of a noncitizen's detention during the pendency of removal proceedings fall squarely within this category. Because such claims do not contest the merits of the removal proceedings themselves, they are "too remote" from the removal action to fall under § 1252(b)(9)'s purview. *See Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality opinion) (cautioning that adopting an expansive interpretation of § 1252(b)(9) would make claims of prolonged detention effectively unreviewable); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (citing *Jennings*, 583 U.S. at 294–95) (explaining that § 1252(b)(9) does not bar suits that do not seek review of a removal order, the executive's decision to seek removal, or the process for determining removability).

Similarly, § 1252(g)'s seemingly sweeping language does not bar collateral challenges to the legality or constitutionality of detention. The Supreme Court has made clear that § 1252(g)'s scope is narrow, covering only the three discrete actions listed in the statute: *commencing* proceedings, *adjudicating* cases, and *executing* removal orders. *See Reno*, 525 U.S. at 482; *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (noting the Supreme Court's "narrow reading" of § 1252(g)). Despite Respondents' contention otherwise, § 1252(g) does not act as a "general jurisdictional limitation" that encompasses every eventuality that could be said to "arise from" those actions. *Reno*, 525

U.S. at 482; *Jennings*, 583 U.S. at 294 (noting that § 1252(g) does not "sweep in" all claims arising from the three actions).  Although § 1252(g) protects the Attorney General's ability to exercise "prosecutorial discretion" in these three enumerated areas, it does not bar courts from resolving "'purely legal question[s]' that 'do[] not challenge the Attorney General's discretionary authority.'"  *Ibarra-Perez*, 154 F.4th at 996 (citing *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004)).  It also does not bar due process claims, such as "collateral challenges to unconstitutional practices and policies used by [an] agency."  *Id.* (citing *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998)).

Here, Petitioner's unlawful detention claims are collateral challenges to unconstitutional practices that fall squarely outside §§ 1252(a)(5), (b)(9), and (g)'s purview.  He does not challenge his order of removal or seek review of any decisions leading up to that order; he has appealed that decision through the proper channels, starting with the BIA.  Nor does he seek this Court's review of the government's decision to commence or adjudicate removal proceedings against him and thereby implicate those jurisdictional bars.  Instead, he challenges the legality of his detention and seeks to vindicate his constitutional due process rights—claims wholly "independent of and collateral to" the merits of his asylum claim, the removal order issued by the Immigration Judge, and the Attorney General's discretionary decision to pursue a removal action against him.  *See J.E.F.M.*, 837 F.3d at 1032; *see also Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *3 (S.D. Cal. Sept. 3, 2025) (finding that a similar challenge to unlawful detention under § 1226(a)'s detention provision was not barred by § 1252(b)(9)); *Gao v. LaRose*, No. 25-cv-2084-RSH-SBC, 2025 WL 2770633, at *2 (S.D. Cal. Sept. 26, 2025) (finding that a similar due process challenge to unlawful detention was not barred by §§ 1252(b)(9) or (g)).  Because Petitioner's unlawful detention claims fall outside § 1252's jurisdictional bars, the Court finds that it has jurisdiction to review Petitioner's habeas petition.

## IV. DISCUSSION

Petitioner's current detention results from this executive administration's abrupt change in position that the mandatory detention provisions of § 1225(b)(2) apply to longtime residents of the United States. Until last year, DHS had historically applied § 1226 and its discretionary release provisions to the vast majority of undocumented noncitizens who, like Petitioner, had long resided in this country.[2] Bucking decades of statutory interpretation and practice, the government now advocates for an expansive interpretation of the mandatory detention provisions of § 1225(b)(2) to justify the detention of *all* noncitizens without lawful status.

The Court, therefore, starts by determining whether Petitioner is subject to the mandatory detention provisions of § 1225(b)(2) or the discretionary release provisions of § 1226. After concluding that the discretionary release framework of § 1226 applies, the Court next considers whether the government violated due process by detaining Petitioner despite his parole status, without first assessing whether materially changed circumstances justified terminating his release.

**A. Petitioner Is Not Subject to Mandatory Detention Under § 1225(b)(2)**

The Court first addresses Respondents' argument that § 1225(b)(2) mandates detention of all noncitizens like Petitioner, who entered the country without documentation,

---

[2]   As the Supreme Court has noted, the discretionary detention framework under § 1226 has long been the "default rule" for noncitizens "already in the country" during removal proceedings. *Jennings*, 583 U.S. at 281. Until 2025, executive agencies have consistently applied § 1226, not § 1225(b)(2), to noncitizens already present in the United States. *See, e.g.*, Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312-01 (1997) (the Department of Justice's implementing regulations explaining that "aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination"); *Martinez v. Hyde,* 792 F. Supp. 3d 211, 221–22 (D. Mass. 2025) (reviewing BIA decisions as of July 24, 2025 and noting no precedent applied § 1225 to noncitizens already in the interior); *Alvarez Ortiz v. Freden*, —F. Supp. 3d—, 2025 WL 3085032, at *10 (W.D.N.Y. Nov. 4, 2025) (observing that across five executive administrations, § 1225 historically applied to noncitizens at or near the border, while § 1226 governed those already inside the country).

regardless of whether that individual has long resided in the United States. Dkt. 10 at 12–16.

Section 1226(a) allows the Attorney General to either detain or release a noncitizen undergoing removal proceedings.[3] 8 U.S.C. § 1226(a); *accord Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020) (explaining that under § 1226(a), a noncitizen may either be "detained" or "allowed to reside in this country" pending removal proceedings). DHS may release a noncitizen on bond or conditional parole after an ICE officer has assessed their flight risk and danger to the community and has determined release is appropriate. 8 U.S.C. § 1226(a)(2); 8 C.F.R. § 236.1(c)(8). If the officer decides to detain the noncitizen, the detainee may request a bond hearing to appeal the officer's decision to an immigration judge. 8 C.F.R. § 1003.19(a).

By contrast, § 1225(b)(2)(A) mandates detention without the possibility of bond for the following noncitizens:

> [I]n the case of an alien who is an **applicant for admission**, if the examining immigration officer determines that an **alien seeking admission** is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

(emphasis added).

In deciding this question of statutory interpretation—whether the above § 1225(b)(2)(A) language applies to long-time undocumented residents like Petitioner—"[w]e begin, as always, with the text." *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 391 (2017). By its plain terms, the statute applies only to "alien[s] seeking admission." Although § 1225(b)(2) does not define "seeking," it is an active term that "necessarily implies some sort of present-tense action." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 488 (S.D.N.Y. 2025) (quoting *Martinez*, 792 F. Supp. 3d at 218; *Al Otro Lado v. Wolf*, 952

---

[3] While the statute refers to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, delegated almost all immigration enforcement and administrative functions vested in the Attorney General to the Secretary of Homeland Security.

F.3d 999, 1011–12 (9th Cir. 2020) ("[T]he 'use of the present progressive, like use of the present participle, denotes an ongoing process.'"). "[A]lien seeking admission" therefore denotes individuals actively and currently seeking admission or entry into this country, rather than individuals who have already entered the country and have long resided here. Contrary to the government's interpretation, the plain meaning of "alien seeking admission" cannot reasonably include noncitizens like Petitioner who entered the country years ago, as *Lopez Benitez* illustrates through this helpful analogy:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there.

795 F. Supp. 3d at 489.

Further, Respondents' expansive reading of § 1225(b)(2) to encompass noncitizens already present in the country would render other provisions of the INA practically null or superfluous. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (courts must construe statutes so that "no clause, sentence, or word shall be superfluous, void, or insignificant."). First, Respondents' interpretation would dramatically narrow, or even nullify, the government's discretionary detention authority under § 1226. *See Lopez Benitez*, 795 F. Supp. 3d at 489–90. As the *Lopez Benitez* court has explained, if any noncitizen who entered the country unlawfully is subject to mandatory detention under § 1225(b)(2), regardless of how long they have resided in the United States, it is "not clear under what circumstances § 1226(a)'s authorization of detention on a discretionary basis would ever apply." *Id.* (citation omitted). Second, Respondents' interpretation would render Congress's recent amendments to the INA through the Laken Riley Act of January 2025 redundant. Those amendments revised § 1226(c) to require detention for certain noncitizens in removal proceedings who fall within

specific criminal history or inadmissibility criteria.[4] If, as Respondents contend, entry without documentation alone could trigger mandatory detention for *all* noncitizens under § 1225(b)(2), there would be no need for the Laken Riley Act to define specific groups of undocumented noncitizens for whom detention is mandatory. These considerations reinforce this Court's conclusion that the detention provisions under §§ 1225(b)(2) and 1226 apply to different classes of noncitizens: § 1225(b)(2) governs those seeking entry into the country, while § 1226 governs those already present. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("the canon against surplusage is strongest when an interpretation . . . would render superfluous another part of the same statutory scheme").

The Court therefore rejects Respondents' recently changed and expansive interpretation of § 1225(b)(2) because it conflicts with both the provision's plain language and the overall structure of the INA.[5]

Here, Petitioner was a long-time resident of this country at the time of his detention. He was therefore not "seeking admission" when the government apprehended him on August 14, 2025, six years after he had already entered the country. Dkt. 1 ¶ 48. Moreover, until its recent change in position, the government had long treated Petitioner as subject to discretionary release under § 1226(a): based on this statutory authority, DHS released Petitioner on parole soon after initiating removal proceedings, and he had remained at

---

[4] The Laken Riley Act amends the categories of noncitizens subject to mandatory detention under § 1226(c) by adding an additional category at § 1226(c)(1)(E) to require DHS to detain any noncitizen who "(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person."

[5] For the same reasons, the Court finds the recent BIA decisions, including *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), and *Matter of Lemus-Losa*, 25 I. & N. Dec. 734 (BIA 2012), unpersuasive. Courts must exercise independent judgment in interpreting statutory provisions. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 413 (2024) (citing *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 109 (2015) ("[I]t thus 'remains the responsibility of the court to decide whether the law means what the agency says.'"); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (agency interpretations are entitled to respect to the extent they are thorough, reasoned, consistent, and persuasive).

liberty for six years. *See* Dkt. 15-1 at 5. Thus, the Court rejects Respondents' belated attempt to recast Petitioner as subject to § 1225(b)(2)'s mandatory detention provisions.[6]

## B. The Government Violated Petitioner's Due Process Rights by Revoking His Conditional Parole Without Justification

Having concluded that Petitioner is subject to the discretionary detention framework of § 1226, the Court next addresses his claim that the government violated due process by revoking his parole without assessing whether changed circumstances justified his loss of liberty. Dkt. 1 ¶¶ 54–57.

When evaluating due process challenges to government action, the *Mathews v. Elridge* test set forth by the Supreme Court calls for a consideration of (1) "the private interest that will be affected by the [government] action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional procedural safeguards"; and (3) "the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." 424 U.S. 319, 321 (1976). Courts in the Ninth Circuit "have regularly applied *Mathews* to due process challenges to removal proceedings." *Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (collecting cases applying *Mathews* in this context). Applying this test in the civil immigration context, the Court will consider (1) the nature and extent of Petitioner's liberty interest; (2) the risk that the government's (lack of) process before detaining him will erroneously deprive him of that liberty interest; and (3)

---

[6] Respondents alternatively argue that discretionary decisions under § 1226 are insulated from judicial review by § 1226(e), which provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." *See* Dkt. 10 at 12. However, the Supreme Court has clarified that § 1226(e) "contains no explicit provision barring habeas review" and does not prevent federal courts from hearing constitutional challenges to the Attorney General's interpretation of detention authority. *Demore v. Kim*, 538 U.S. 510, 517 (2003). The Court reaffirmed this principle in *Jennings*, holding that § 1226(e) does not preclude challenges to the statutory framework permitting detention without bail, which fall outside the preclusive scope of § 1226(e). 583 U.S. at 295 (citing *Demore*, 538 U.S. at 516).

the government's interest in maintaining its current practice of detaining noncitizens like Petitioner.

### 1. The Petitioner's Liberty Interest

Starting with the first *Mathews* factor, the Court considers the scope of Petitioner's liberty interest as a noncitizen who has been released on conditional parole for over six years. *Diaz*, 53 F.4th at 1207.

It is well established that the Fifth Amendment protects noncitizens from unlawful detention during their removal proceedings. *Zadvydas*, 533 U.S. at 690; *Diaz*, 53 F.4th at 1205 (quoting *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021)). Freedom from arbitrary imprisonment is a core liberty interest, one that "lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. When the government grants release at its discretion, due process still attaches to safeguard a parolee's liberty, as "termination [of parole] inflicts a 'grievous loss'" on the individual. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). By granting release, the government makes an "implicit promise" that liberty will be revoked only for failing to comply with the conditions of release. *Young v. Harper*, 520 U.S. 143, 147–49 (1997) (citing *Morrisey*, 408 U.S. at 482). This promise creates a protectable liberty interest grounded in the parolee's reliance on the government's assurance that it will not arbitrarily return the individual to custody. *Id.*

Petitioner first acquired a protectable liberty interest on March 20, 2019, when DHS released him "pending a final decision in [his] exclusion/deportation hearing" on the condition that he abide by reporting requirements. Dkt. 1 ¶¶ 2, 47; Dkt. 15-1 at 5. While the record does not specify DHS's reasons for granting parole, the governing regulations required the agency to determine that Petitioner did not pose a danger to the public and was likely to appear for future proceedings before releasing him. *See* 8 C.F.R. § 1236.1(c)(8). From this, the Court can infer that the government released him on those grounds and, in doing so, made an "implicit promise" that his liberty would be revoked only if he failed to comply with his release conditions or if circumstances regarding his flight risk or dangerousness materially changed. *See Morrissey*, 408 U.S. at 482 ("The parolee has relied

on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."). Petitioner, therefore, held a protectable interest in remaining at liberty while his removal proceedings were pending, contingent on both his compliance with release conditions and the absence of such material changes.

   *2. The Government's Erroneous Deprivation of Petitioner's Liberty Interest*

Having determined that Petitioner held a protectable interest in his continued freedom, the Court next considers whether the government's failure to conduct an individualized assessment prior to revoking his parole risked erroneously depriving him of that liberty.

Here, Respondents concede that they conducted no individualized assessment or process to determine whether Petitioner's release should be revoked. As discussed above, Petitioner had a protectable interest in remaining at liberty (1) as long there were no material changes that rendered him a flight risk or danger to the community and (2) he complied with release conditions. Yet, the record contains no indication that DHS reassessed Petitioner's flight risk or danger to the public, the very factors it necessarily considered under § 1226(a) when granting release. Nor is there any indication that Respondents proceeded to detain Petitioner based on a finding that he failed to comply with his reporting requirements or any other condition of his release. By failing to assess whether a change in these circumstances justified revoking Petitioner's release prior to redetaining him, Respondents risked wrongfully depriving him of a protected liberty interest. By the same token, Respondents also breached the "implicit promise" made to Petitioner that he would enjoy this liberty as long as he did nothing to forfeit it. *See Morrissey*, 408 U.S. at 482.

   *3. The Government's Fiscal and Administrative Burdens*

Finally, the Court considers the government's interest in maintaining its current procedures. While the Court acknowledges that providing a bond hearing or other form of due process prior to depriving someone of their liberty poses some degree of "fiscal and administrative burden," *Diaz*, 53 F.4th at 1209 (quoting *Mathews*, 424 U.S. at 335), the

government has not provided any evidence that the burden would be a significant one. The Court therefore gives this factor little weight, especially when balanced against the significant liberty interest at stake and the need for adequate procedural safeguards to prevent an erroneous deprivation of that interest.

In sum, the government incarcerated Petitioner for two months without adequate process to assess whether any change in circumstances justified revoking his parole and without justification, aside from its wrongful assertion of statutory authority under § 1225. The Court therefore concludes that Petitioner was subject to an unlawful and unconstitutional detention in violation of his Fifth Amendment due process rights and orders his immediate release.

### 4. The Scope of Relief

The Court next considers whether additional relief, aside from ordering release, is appropriate in this case. While habeas relief commonly includes reprieve from physical imprisonment, "release need not be the exclusive remedy." *Boumediene v. Bush*, 553 U.S. 723, 779–80 (2008) ("depending on the circumstances, more [relief] may be required"). Habeas orders also extend to defining the parameters of a petitioner's freedom when needed to provide complete relief from unlawful detention. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010) (holding that petitioner's release—revocable at the government's discretion—did not provide complete relief where petitioner sought a legal ruling that he could only be redetained upon a bond hearing); *Clark v. Martinez*, 543 U.S. 371, 376 n.3 (2005) (despite release, petitioner's habeas claim challenging the statutory authority for his detention "continue[d] to present a live case or controversy" because the court could provide relief to prevent redetention on the same allegedly unlawful basis). As discussed above, the government granted Petitioner a protectable liberty interest that persists as long as (1) he complies with his release conditions and (2) there are no material changes that render him a flight risk or danger to the community. *See supra* pp. 10–13. Despite its previous grant of liberty, the government detained Petitioner without notice or any consideration of his parole status and the liberty interest that it created. And despite

myriad court orders like this one, the government continues to assert its § 1225 authority to detain countless noncitizens and subject them to the same wrongful deprivation of their liberty interests.[7] Consequently, Petitioner remains exposed to immediate redetention and a repetition of the same harm he has just endured, even after this Court's release order. The Court therefore concludes that specific injunctive relief prohibiting further detention based on this wrongful assertion of statutory authority is necessary. Consistent with many other courts, the Court enjoins any further detention of Petitioner unless the government first—prior to any detention—justifies the deprivation of his liberty interest at a bond hearing.[8] *See, e.g.*, *Aceros*, 2025 WL 2637503, at *12; *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 938 (N.D. Cal. 2025); *O.G. v. Albarran*, No. 1:26-CV-00010-TLN-DMC, 2026 WL 19105, at *5 (E.D. Cal. Jan. 3, 2026).

## V.   CONCLUSION

For the reasons stated above, the Court (1) granted Petitioner's habeas petition [Dkt. 1]; (2) ordered his immediate release [Dkt. 18]; and (3) enjoined Respondents from redetaining Petitioner during the pendency of his removal proceedings without first providing a bond hearing before an immigration judge to justify his detention. At any such

---

[7]  *See, e.g.*, *Lopez v. Warden, Otay Mesa Det. Ctr.*, No. 25-CV-2527-RSH-SBC, 2025 WL 3005346 (S.D. Cal. Oct. 27, 2025); *Beltran v. Noem*, No. 25CV2650-LL-DEB, 2025 WL 3078837 (S.D. Cal. Nov. 4, 2025); *Calel v. LaRose*, No. 3:25-CV-02883-GPC-JLB, 2025 WL 3171898 (S.D. Cal. Nov. 13, 2025); *Faizyan v. Casey*, No. 3:25-CV-02884-RBM-JLB, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025); *Sanchez v. Noem*, No. 25-CV-3068 JLS (MMP), 2025 WL 3214987 (S.D. Cal. Nov. 18, 2025); *Ruiz v. LaRose*, No. 25-CV-02714-BAS-SBC, 2025 WL 3214975 (S.D. Cal. Nov. 18, 2025). The government has continued this practice even after *Bautista v. Noem,* No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025), which declared as unlawful the DHS policy of classifying noncitizens arrested in the United States as subject to § 1225(b)(2). To this day, the government continues to mandatorily detain these noncitizens pursuant to its purported § 1225 authority. *See, e.g.*, *Azizi v. LaRose, et al.*, No. 26-cv-0049-JO-BJW, Dkt. 1 (Habeas Pet.) (S.D. Cal. Jan. 5, 2026); Dkt. 5 (Reply to Habeas Pet.) (S.D. Cal. Jan. 12, 2026) (government acknowledging that petitioner was detained on December 31, 2025—after the *Bautista* decision—under its § 1225 authority).

[8]  While § 1226 allows the government to hold a noncitizen in custody while it decides whether to initially grant release, a pre-deprivation hearing is the more appropriate remedy for individuals like Petitioner who already enjoy a liberty interest. In order to prevent an erroneous deprivation of that existing liberty interest and therefore satisfy due process requirements, this hearing must take place <u>prior</u> to any detention.

hearing, the government must carry its burden of demonstrating, by clear and convincing evidence, that (1) materially changed circumstances render him a danger to the community or a flight risk, or (2) he has violated a condition of his release.  *See Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011).

**IT IS SO ORDERED.**

Dated:  January 29, 2026

_____
Honorable Jinsook Ohta
United States District Judge